**Andrea MARTINEZ, Jeneal Lambert, Gus DeHerrera, Alan Adams, and John McFarland, Plaintiffs and Respondents,**

v.

**BONA VISTA WATER IMPROVEMENT DISTRICT, a Public Corporation, Defendant and Appellant.**

No. 16015.

Supreme Court of Utah.

May 9, 1979.

Carl T. Smith, Ogden, for defendant and appellant.

Darrell G. Renstrom, Ogden, for plaintiffs and respondents.

CROCKETT, Chief Justice:

Plaintiffs, a majority of real property owners in taxing units 15 and 22 of Weber County, petitioned to have their property withdrawn from defendant Bona Vista Water Improvement District.[1] The petition alleged that the plaintiffs receive no services from the defendant, as all water service is provided by Ogden City.

The district court, upon finding the allegations of the petition to be true, appointed three disinterested persons as commissioners to fix the terms of severance and withdrawal as related to any liabilities of the improvement district that had been incurred during the connection of the territory with the improvement district.[2] After receiving the commission's recommendations and following a hearing on May 9, 1978, pursuant to Sec. 17–6–30, U.C.A.1953, the court ordered:

> . . . that the withdrawn area of territory described herein be relieved of all taxes and charges, including taxes and charges for payment of revenue bonds and maintenance and operation costs of the Bona Vista Water Improvement District, except that if said Improvement

---

**1.** As permitted by Sec. 17–6–28, U.C.A.1953.  **2.** Pursuant to Sec. 17–6–29, U.C.A.1953.

District has any revenue bonds or general obligation bonds outstanding and unpaid on the date of the filing of the petition, *the withdrawn area shall continue to be taxable under the provisions of* section 17–6–3.8(b) Utah Code Annotated 1953, but only to the extent and only in those years where it becomes necessary to levy such a tax on the withdrawn area *to forestall or prevent a default* in the payment of principal and interest, or either, *on any revenue bonds or general obligation bonds of the Improvement District outstanding on the date* of the filing of the petition herein.

Defendant's contention is that permitting such withdrawal has the effect of releasing the petitioners from the obligations of contract and that they should remain in the district and subject to taxation.[3]

In 1958 the defendant district installed water lines to serve the district, including tax units 15 and 22 in which the plaintiffs are situated. In 1960, prior to any water being delivered by the defendant, Ogden City annexed the two units; and since then has furnished all the water to these plaintiffs. Meanwhile, since that date the plaintiff property owners have paid and been taxed by Ogden City for their water, and have also paid the defendant district over $200,000 in taxes during that time. The water line referred to is used by the defendant to serve others, but in addition to the fact that the plaintiffs neither have received nor are receiving any service from the defendant, there is no prospect of receiving any such service in the future.

The statutes relating to the controversy herein are:

17–6–30. Withdrawal from improvement district—Hearing—Commissioners' report—Action by court—Taxes and charges on property.—The commissioners . . . as soon as practicable shall report their findings to the court. Upon the filing of the report, the court shall enter its decree in accordance with the report and request of the petition . . provided, however, that the property within the said improvement district . . *shall continue taxable for the purpose of paying its just proportion of the general obligation bonds* of the improvement district outstanding . . . until such bonded indebtedness shall have been satisfied. The withdrawn area shall be relieved of all other taxes and charges, including taxes and charges for payment of revenue bonds and maintenance and operation costs of the district, except that if any district has any revenue bonds outstanding and unpaid on the date of the filing of the petition the withdrawn area shall continue to be taxable under the provisions of section 17–6–3.8(b) U.C. A.1953, *but only to the extent and only in those years where it becomes necessary to levy such tax* on the withdrawn area in order *to forestall or prevent a default* in the payment of principal and interest, or either, *on any revenue bonds of the district outstanding on the date of the filing of the petition.*

The foregoing section must be read in connection with the section immediately following for the purpose of requiring the property withdrawn to pay its "just proportion of the general obligation bonds of the improvement district outstanding at the time of filing the petition."

17–6–31 U.C.A., 1953 reads:

Withdrawal from improvement district—Payment of indebtedness.—The court shall have the power to order such taxes levied *from time to time* (Emphasis added) upon the property included within the withdrawn territory as above required under the provisions of section 17–6–3.-8(b) Utah Code Annotated 1953 and *as may be requisite for the purpose of paying its just proportion of the general obligation bonds* of the improvement district outstanding at the time of the filing of the petition. The board of county commissioners shall levy such taxes under the

---

3. Defendant does not question the constitutionality of Sec. 17–6–30 U.C.A.1953 which authorizes this withdrawal procedure.

direction of the court and the same shall be collected by the county treasurer as other taxes. [All emphasis added.]

When Sec. 17–6–30 is read in conjunction with Sec. 31 it appears that the intent of the legislature was to permit the withdrawal of an area under appropriate circumstances, but that it should remain subject to taxes if that becomes necessary and justifiable to pay its fair share of any bonds then outstanding; and that the court should retain jurisdiction to order such taxes levied thereon "from time to time . . . as may be requisite for the purpose of paying its [the withdrawn area's] just proportion of the general obligation bonds of the improvement district outstanding at the time of the filing of the petition" see Sec. 17–6–31 quoted above; and the same is true as to taxation for outstanding revenue bonds, under Sec. 17–6–30, "but only to the extent and only in those years where it becomes necessary to levy such tax on the withdrawn area in order to prevent default in the payment . . ." of revenue bonds.

The judgment should be understood and applied as conforming to the requirements of the statutes hereinabove quoted. It will be noted that in accordance with their provisions the trial court safeguarded the rights of the defendant improvement district (and any of its bond holders) by including in its judgment the provisions that as to any revenue or obligation bonds outstanding on the date of the filing of the petition, the withdrawn area should continue to be taxable under appropriate proceedings and circumstances.

When the total situation is considered, including the fact that the plaintiffs had paid over $200,000 in taxes over the past 18 years, for which they had received no service and had no prospect of receiving any, it is our opinion that the action of the trial court serves the ends of justice and that it does not transgress the authority granted by the statutes quoted herein for withdrawal from such an improvement district.

Indulging the presumptions of verity and correctness to which the judgment is entitled, we see no reason to disturb it.

Affirmed. Costs to plaintiffs (respondents).

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.